IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| TONI MAREK, | § | |
|     Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:14-0055 |
| v. | § | |
| | § | |
| PHI THETA KAPPA HONOR | § | |
| SOCIETY and DR. ROD RISLEY, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

In this employment discrimination case, Defendants Phi Theta Kappa Honor Society and Dr. Rod Risley filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment [Doc. # 4].   Plaintiff Toni Marek, proceeding *pro se*, filed a Response [Doc. # 7], and Defendants filed a Reply [Doc. # 8].  The Motion is ripe for consideration.  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court determines that the Defendants' Motion should be **granted**.

## I.     BACKGROUND

Plaintiff alleges in her Complaint [Doc. # 1] that Defendants Phi Theta Kappa Honor Society ("PTK") and Dr. Rod Risley ("Risley"), who is PTK's Executive Director, engaged in employment discrimination against her on account of her sex. In particular, Plaintiff claims that she was subject to unwelcome touching from Risley

at PTK events on May 23, 2013, and January 10, 2014. *Id*. at 2, ¶¶ 7-8. She alleges that Defendants "terminated [her] employment" on January 11, 2014, failed to promote her, and denied her future employment. *Id*. ¶ 6, ¶ 9.[1] She further alleges that, in the period from January through April, 2014, Defendants made defamatory statements about her to higher education professionals throughout PTK's chapters. Complaint, at 2, ¶¶ 10-11.

PTK is "an academic honor society comprised of 1287 chapters located at two-year colleges around the world, which in turn are comprised of student-members attending those colleges." Risley Declaration, at 1, ¶ 3. Plaintiff was a member of PTK's chapter at Victoria College in Victoria, Texas, while she was a student at the college, and served as an International Officer ("IO") of PTK. *Id*. at 2, ¶ 5. *See* Declaration of Saralyn Quinn (Exhibit A to Reply) ("Quinn Declaration"), at 1, ¶ 4.[2] Risley explains that the IO position is "the highest pinnacle of leadership" within PTK and that the IOs are elected at PTK's annual conventions for one-year terms. Risley Declaration, at 1, ¶ 4.

---

[1]     Risley states that Marek "resign[ed]" from her position with PTK "in January 2014." Declaration of Dr. Rod Risley (Exhibit A to Motion) ("Risley Declaration") at 2, ¶ 5.

[2]     Quinn, who is Senior Director of Operations and Human Resources for PTK, states that Marek was a member and IO of PTK while a student at Victoria College and that, during that period, "it was PTK's understanding that Marek was primarily engaged in her own studies" and that "her membership and service as an IO was only one part of her educational experience." *Id*.

On behalf of PTK, both Risley and Quinn aver that Marek was never an employee of PTK.  Risley Declaration, at 2, ¶ 7; Quinn Declaration, at 2, ¶ 6.

> PTK never paid Marek any wages, salary, or other remuneration.  PTK has never given Marek any employment benefits or any other benefits that were not incidental to her services as an IO or a student-member of PTK's Victoria College Chapter.

Risley Declaration, at 2, ¶ 8.  *See* Quinn Declaration, at 2, ¶ 7 (same).  Risley further states that he never employed Marek or paid her wages, salaries, or benefits in his individual capacity.  Risley Declaration, at 2, ¶¶ 9-10.

Plaintiff does not assert or present evidence that she was paid any wages or salary by PTK.  However, she claims that she was compensated for her work as an IO because Defendants paid her "$700 in 2013 via direct deposit," gave her "a tablet valued at approximately $650," gave her "an employee credit card to charge purchases of flights, hotels, rental cars, and meals," allowed her to use the employee credit card "to purchase a rental car for personal use at the value of $335.12," gave her meals "in excess of a daily per diem amount," promised her two payments in 2014 in the amounts of $700 and $2000, offered her "benefits that other employees receive," and "did not make clear that [she] would not be protected under the Volunteer Protection Act."  Response, at 8.[3]   Plaintiff further argues that PTK and Risley were "in

---

[3]      Plaintiff further asserts that Defendants "promised" her the following benefits:
(continued...)

complete control" of her work, including travel, deadlines, meetings, and conduct; that she was bound by the "employment duties" set forth in PTK's constitution and bylaws; and that Risley and other PTK personnel referred to her as "staff."  Response, at 3-4.

Risley states that any payments received by Plaintiff were incidental to her service as an IO:

> The only monetary or in-kind payments Marek received from PTK was reimbursement for her prior-approved travel and related expenses for attending [PTK's] various meetings and[] annual convention, tuition scholarship for required training and leadership seminars, reimbursement for expenses incurred in service as a PTK officer, and a laptop computer and case for use in performing officer-related services.  These reimbursements and payments were incidental to her service as an IO.

Risley Declaration, at 2, ¶ 8.  Quinn adds that Plaintiff was "not entitled to participate in PTK's health insurance, pension, or 401K saving plans" that are available to PTK employees, that she was not covered by PTK's workers' compensation policy, and that she was not considered a PTK employee for tax purposes.  Quinn Declaration, at 2, ¶ 7, ¶ 9.  She states that PTK did not enter an employment or service contract with Marek, did not believe it was entering an employment relationship with Marek, and

---

3       (...continued)
        "indispensable work and leadership experience, possible academic credit in the form of a leadership course, the opportunity to network with potential employers and admissions teams in higher academe, valuable employer references, and possible future work with [PTK]."  *Id*.

did not have any right to assign Marek work apart from her duties as an IO. *Id.* ¶ 8. She further states that Marek's one year term was not renewable and was not likely to lead to employment with PTK, and that in the last ten years only two former IOs (or four percent of the IOs serving during that time) had been hired as PTK employees. *Id.* ¶ 10.

In April 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 5, 2014, the EEOC issued a Dismissal and Notice of Rights informing her that it was closing its file on her charge because there was "[n]o Employee/Employer relationship." *See* Dismissal and Notice of Rights [Doc. # 1-1].

Plaintiff filed her Complaint in this Court on September 4, 2014. On December 23, 2014, Defendants filed their Motion seeking dismissal of the case or, in the alternative, summary judgment. Plaintiff filed her Response on January 26, and Defendants replied on February 6, 2015.

## II.   LEGAL STANDARDS UNDER RULES 12 AND 56

Defendants' Motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment under Rule 56. The Court will treat the motion as one for summary judgment because both parties have submitted matters outside the pleadings with their briefing. *See* FED. R. CIV. P. 12(d) ("If, on a motion

under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")  Each party has been given an opportunity to present pertinent material, as required by Rule 12(d), and the Motion has been briefed, with evidence submitted, by all parties.  Moreover, Plaintiff was cautioned by the Court that summary judgment could be entered on the pending motion.  *See* Order [Doc. # 6].

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions

which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III.   ANALYSIS

### A.   Title VII

The dispositive issue for Plaintiff's Title VII claim is whether Plaintiff was an "employee" of either Defendant.[4]  The Fifth Circuit has adopted the "threshold-remuneration test" for assessment of whether a employment relationship exists in a volunteer context for purposes of Title VII.  *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 439 (5th Cir. 2013) (adopting test used by the Second, Fourth, Eighth, Tenth, and Eleventh Circuits).[5]  Under such test, a court first determines, as a threshold matter, whether the volunteer has demonstrated receipt of "remuneration," consisting of either direct compensation (salary or wages) or indirect benefits "that are not merely incidental to the activity performed."  *Id*. at 435; *see id*. at 437-38.  If the plaintiff does not make a showing of remuneration, the inquiry ends and the volunteer is not an employee under Title VII.  If the plaintiff demonstrates remuneration, the

---

[4]     As stated above, the EEOC concluded that no employee/employer relationship existed in this case.  *See* Dismissal and Notice of Rights [Doc. # 1-1].

[5]     Title VII defines an "employee" as "an individual employed by an employer."  42 U.S.C.A. § 2000e(f).  Because this statutory definition is circular, the courts have drawn on common law principles when assessing the employment relationship.  *See Juino*, 717 F.3d at 434-35.

court proceeds to the second step, which analyzes the putative employment relationship under the common law agency test.  *Id*. at 435, 437-38.[6]

In *Juino*, the Fifth Circuit applied the two-step test to the case of a volunteer firefighter who alleged that she had been sexual harassed by other firefighters.  The *Juino* plaintiff argued that she was a Title VII "employee" because, although she did not receive a salary, she received benefits including a life insurance policy, a uniform and badge, response gear, and training.  *Id*. at 439-40.  The Court held that these benefits were "purely incidental to [the plaintiff's] volunteer service" and thus concluded, as a matter of law, that the plaintiff "was not an 'employee' for purposes of Title VII because she has failed to make a threshold showing of remuneration."  *Id*. at 440.  The *Juino* Court therefore did not proceed to the second stage of the analysis.

In this case, Marek has failed to demonstrate a genuine issue of material fact regarding the threshold showing of remuneration.  As stated above, Marek has not alleged that she received direct compensation in the form of salary or wages.  Rather, she claims remuneration in the form of indirect benefits, in particular, a payment of $700, an electronic tablet, use of a PTK credit card for travel expenses, and meals in

---

[6]     Under the common law agency test, courts consider factors such as the hiring party's right to control the work of the hired party; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; and the provision of employee benefits. *Juino*, 717 F.3d at 434 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

excess of the per diem amount.  *See* Response, at 8.  These benefits, assuming they could be proven at trial, are less significant than the life insurance policy and other benefits that were considered by the Fifth Circuit in *Juino* and held to be "purely incidental."  *See Juino*, 717 F.3d at 440.[7]

As a matter of law, and viewing all facts in the light most favorable to Marek, Marek has failed to demonstrate a genuine issue of material fact as to remuneration. Therefore, the Court does not proceed to the second stage of analysis under *Juino*, which pertains to the parties' relationship under the common law agency test.[8]

Summary judgment is granted for Defendants on Plaintiff's Title VII claim.

## B.    State Law Claims

Marek's Complaint alleges that Defendants engaged in defamation (libel and slander) against her.  Complaint, at 2, ¶¶ 10-11.  To the extent Plaintiff intends to bring claims separate from her Title VII claim, any claim for defamation would arise under Texas law rather than federal law.    *See* TEX. CIV. PRAC. & REM. CODE

---

[7]    Moreover, in this case Defendant has presented unrefuted evidence that Marek enjoyed no health insurance, pension, savings plan, or workers' compensation plan with PTK.  Quinn Declaration, at 2, ¶ 7, ¶ 9.

[8]    Because the Court does not reach this second stage of analysis, it does not analyze considerations raised in Plaintiff's briefing such as PTK's right to control Marek's work and PTK's alleged enforcement of professional guidelines.  *See* Response at 5, 7; *id*. Exhibit B (PTK Constitution); *id*. Exhibit C (PTK Professional Guidelines); *id*. Exhibit D (PTK Honor Code for IOs).

§ 73.001; *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013) (citing Texas law); *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 596 (5th Cir. 2007) (citing Texas law).

Although in certain situations a federal court has supplemental jurisdiction over state law claims, *see* 28 U.S.C. § 1367(a), a district court may decline to exercise supplemental jurisdiction when the court has "dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). This case is in its very early stages, and the Court has not yet held an initial pretrial conference or entered a docket control order. Because Plaintiff's Title VII claim (the only claim over which this Court has original jurisdiction) has been dismissed at such an early stage of the proceedings, the Court declines under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over any defamation claims. *See Moore v. Willis Independent School Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("'Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment [Doc. # 4] is **GRANTED**.   Plaintiff's Title VII claim is **DISMISSED with prejudice**.

A separate final judgment will issue.

Signed at Houston, Texas, this 13<u>th </u>day of **February, 2015**.

Nancy F. Atlas
United States District Judge